[No. C009338. Third Dist., June 29, 1992.]

DANIEL S. VANDI, Plaintiff and Appellant, v.
PERMANENTE MEDICAL GROUP, INC., et al., Defendants and
Respondents.

## COUNSEL

Higgins & Whaley and Dennis Owen Higgins for Plaintiff and Appellant.

Kennedy P. Richardson and Andrew C. Hoye for Defendants and Respondents.

## OPINION

**SPARKS, Acting P. J.**—In this medical malpractice action we consider and reject the claim that the physician had a duty to inform his patient of a diagnostic test which, in the physician's professional judgment, was not medically indicated.

Plaintiff Daniel S. Vandi appeals from a judgment entered on a jury verdict in favor of defendants Permanente Medical Group, Inc., (Permanente) and Daniel Field, M.D. Plaintiff's claim is based upon the failure of Dr. Field and other Permanente physicians to perform a diagnostic procedure known as a C.T. (computerized tomography) scan after he suffered a seizure. The jury found by special verdict that neither Dr. Field nor any other Permanente physician was negligent in failing to perform a C.T. scan. On appeal plaintiff contends that the trial court erred in refusing to instruct the jury that defendants could be held liable for failing to disclose to him information concerning C.T. scans and the availability of this procedure. Under the circumstances presented we find no error and shall affirm the judgment.

### FACTS

Plaintiff was employed as a nurse anesthetist at Kaiser Hospital.[1] On Saturday, September 19, 1987, plaintiff was in the operating room administering an anesthetic to a surgery patient. Just after the surgery had been

---

[1]Plaintiff brings this appeal upon a partial reporter's transcript. We do not have all of the evidence, including all of the expert medical testimony, before us. In this appeal plaintiff challenges only the failure to submit a modified "informed consent" theory to the jury; he does not assert legal error or challenge the sufficiency of the evidence with respect to the determination of the jury on the issues submitted to it. The record presented by plaintiff is sufficient in view of the limited nature of the issue on appeal. However, in considering this issue we must accept the jury's determination that defendants were not otherwise negligent in their treatment of plaintiff. Our statement of facts will reflect this determination.

completed plaintiff suffered a grand mal seizure. He was given the appropriate immediate treatment for a seizure and was then transferred to the emergency department. Dr. Field was the emergency medicine specialist on duty that day. He took a medical history from plaintiff and performed a diagnostic examination. He discovered nothing significant to establish the reason for the seizure.

Dr. Field placed a telephone call to Dr. Barbara Gardner, the neurologic specialist on call that day. Dr. Gardner advised that it would be appropriate to place plaintiff on an antiseizure medication and that she would arrange for an MRI (magnetic resonance imaging) scan and examination by a neurologist on the following Monday. Dr. Field agreed with Dr. Gardner and followed that advice.

Late Sunday night plaintiff experienced additional difficulties. He returned to Kaiser Hospital on Monday. He was ultimately subjected to a C.T. scan, an MRI scan, and two exploratory surgeries. Plaintiff's medical difficulties were caused by two brain abscesses. As a result of the abscesses, plaintiff suffered partial paralysis of his left limbs which had improved over time but remained significant at the time of trial.[2]

Plaintiff's primary theory at trial was that defendants were negligent in failing to perform a C.T. scan on the Saturday after he had his first seizure. There was evidence that a C.T. scan would have been able to detect at least one of plaintiff's lesions. Plaintiff's expert believed that if the lesions had been discovered and treated earlier there was a good chance the detrimental effects might have been lessened or perhaps avoided. He believed that an imaging study, either a C.T. scan or an MRI scan, should have been performed on Saturday.

At the time of this incident Kaiser Hospital was equipped to perform C.T. scans but MRI scans had to be arranged through an independent medical provider and were generally not available on weekends. Dr. Gardner testified that she believed an MRI scan to be the more appropriate procedure because of its greater sensitivity and ability to detect more subtle abnormalities. There was evidence that, among the causes of first-time grand mal seizures, brain abscesses are extremely rare. When Dr. Field examined him, plaintiff displayed none of the symptoms or medical history that would be associated with the possibility of a brain abscess. The other possible causes of a

---

[2]The upper and larger abscess caused plaintiff's seizure, while the lower and smaller abscess caused the paralysis. The lower abscess was not located and identified for more than a month after plaintiff suffered his seizure. Plaintiff makes no contention on appeal with respect to the course of his treatment after he returned to the hospital on the Monday following his seizure.

first-time grand mal seizure, including brain tumors which are also rare, would not require immediate identification and treatment.[3]

By special verdict the jury found that defendants were not negligent in their treatment and care of plaintiff. Judgment was entered in favor of defendants.

## DISCUSSION

Plaintiff contends that the trial court erred in refusing to instruct the jury on a modified duty of disclosure theory.[4] According to plaintiff, defendants should be held liable for failing to advise him of the availability of a C.T. scan, the possibility that it could detect a large brain abscess, and the risks involved in waiting for an MRI scan. In denying the request for instructions on such a theory, the trial court reasoned that the claim that

---

[3]In the large majority of cases medical science cannot identify the cause of first-time grand mal seizures. The most common identifiable cause is drug or alcohol abuse. In recent times the AIDS virus has become a common source of neurological problems. Infection may be a cause. Plaintiff had no symptoms and presented no history suggestive of any of these causes. Brain abscesses, which we have noted are rare, are usually accompanied by a history of such symptoms as headaches, drowsiness or confusion, lethargy, fever, neck stiffness, nausea and vomiting, ocular palsy, and visual disturbance, among others. Neurological symptoms associated with a brain abscess tend to be focal, that is, affecting particular functions, rather than general like a grand mal seizure. Plaintiff's diagnostic presentation and history did not reflect these symptoms.

[4]Specifically, plaintiff argues that the trial court erred in refusing to instruct the jury on the unmodified versions of BAJI Nos. 6.10 (When Consent to Operation or Treatment is Necessary), 6.11 (Reality of Consent—Physician's Duty of Disclosure), 6.11.5 (Reality of Refusal of Diagnostic Tests—Physician's Duty of Disclosure), and 16.01.1 (Form of Special Verdict—Lack of Informed Consent). He further contends that the court erred in failing to give a modified version of BAJI No. 6.11. This modified version added the following paragraphs to the standard instruction:

"In this case, you must determine whether or not the evidence proves the following propositions:

"1. That Dr. Field and/or Dr. Gardner knew or should have known that a reasonable person in the plaintiff's position would regard as significant and material information:

"(a) That a brain lesion, i.e. either a tumor or abscess, is the cause of first time seizures in approximately 10% of the individuals in plaintiff's age group who exhibit no other apparent cause for the seizure.

"(b) That such brain lesions can cause paralysis and death if not treated.

"(c) - That while an MRI scan is will [sic] normally show more detail that [sic] a CT scan, an MRI would not be scheduled until Monday, September 21, 1987, while a CT scan could be performed on plaintiff immediately.

"(d) That a CT scan will show such a lesion if the lesion is large enough.

"(e) That if such a brain lesion were to be seen on a CT scan, plaintiff would be started on antibiotics and steroids immediately as a safety precaution to fight any bacterial infection and to reduce any edema caused by a tumor or abscess.

"2. That propositions 1(a), 1(b), 1(c), 1(d) and 1(e) are facts which are not commonly appreciated."

defendants should have proposed an immediate C.T. scan was adequately addressed in the general negligence instructions, there was no expert medical testimony to support a claimed duty to disclose with respect to nonrecommended procedures, and that existing authorities did not support the theory.

A physician's duty of reasonable disclosure was established in the seminal case of *Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1]. There, a doctor had proposed and obtained his patient's consent to a surgical procedure but had not explained the inherent risks involved. ■ The Supreme Court held that in order for a doctor to obtain a patient's "informed consent" to a recommended therapy, the physician must provide a reasonable explanation of the procedure, its likelihood of success, and the risks involved in accepting or rejecting the proposed therapy. (*Id.* at pp. 243-244.) If a doctor fails to make reasonable disclosure and a prudent person in the plaintiff's position would have declined the procedure had disclosure been made, then the doctor may be held liable if the risks inherent in the procedure materialize. (*Id.* at p. 245.)

The duty of reasonable disclosure was expanded in *Truman* v. *Thomas* (1980) 27 Cal.3d 285 [165 Cal.Rptr. 308, 611 P.2d 902]. There, a doctor recommended that his patient undergo a risk-free diagnostic procedure but failed to advise her of the risks involved in the failure to follow his recommendation. The Supreme Court concluded that for a patient to make an informed choice to decline a recommended procedure the patient must be adequately advised of the risks of refusing to undergo the procedure. (*Id.* at p. 292.) Thus, the high court extended the duty to make disclosure to include recommended diagnostic as well as therapeutic procedures and to include situations in which the patient declines the recommended procedure. (*Ibid.*)

In *Scalere* v. *Stenson* (1989) 211 Cal.App.3d 1446 [260 Cal.Rptr. 152], the plaintiff made the same argument that plaintiff here makes, namely, that a physician has a duty of disclosure concerning procedures which he or she is not recommending. There, the defendant physician, a cardiologist, performed an angiogram on the plaintiff's right arm. After surgery, plaintiff reported pain and discomfort in her arm. The physician examined and tested her arm and concluded that it was progressing satisfactorily. Consequently, he neither told her about nor recommended any further diagnostic tests or therapy. About a year later the plaintiff underwent a saphenous vein bypass of her right brachial artery with resultant damage. In the ensuing malpractice action, the jury found that the physician was not negligent. On appeal, plaintiff contended that the trial court erred in not instructing on duty to disclose. The Court of Appeal rejected the argument, concluding that the duty of disclosure is predicated upon a recommended treatment or diagnostic

procedure and that the failure to recommend a procedure must be addressed under ordinary medical negligence standards. (*Id.* at pp. 1449-1453. See also *Townsend* v. *Turk* (1990) 218 Cal.App.3d 278, 287 [266 Cal.Rptr. 821]; *Munro* v. *Regents of University* of California (1989) 215 Cal.App.3d 977, 986-987 [263 Cal.Rptr. 878]; *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1388 [273 Cal.Rptr. 231]; see generally, Annot., Medical Malpractice: Liability for Failure of Physician to Inform Patient of Alternative Modes of Diagnosis or Treatment (1985) 38 A.L.R.4th 900.)

We are satisfied that the *Scalere* opinion is correct. In addressing this contention it is necessary to keep in mind that we are considering a medical procedure which, in the exercise of professional judgment, a doctor does not recommend. If the procedure is one which should have been proposed, then the failure to recommend it would be negligence under ordinary medical negligence principles and there is no need to consider an additional duty of disclosure. The duty suggested by plaintiff, to disclose information about nonrecommended procedures, could arise only where, as here, a physician does not recommend a procedure and competent medical practice did not require that he or she recommend the procedure. We agree with the *Scalere* court that it would be inappropriate to impose such an imprecise and unpredictable burden upon a physician. (211 Cal.App.3d at p. 1453.)

One difficulty with the rule proposed by plaintiff is that it is inherently and irrevocably wedded to medical hindsight. After a medical condition has been discovered it may be relatively easy to look back and identify a diagnostic procedure which would have revealed the condition but which was not medically indicated at the time. But in treating a patient a physician can consider only what is known at the time he or she acts. At the time of treatment there may be dozens, perhaps even hundreds, of diagnostic procedures which could reveal a rare and unforeseen medical condition but which are not medically indicated. Under plaintiff's proposed theory the doctor would be required to explain each and every possible diagnostic procedure regardless whether he or she believes it to be medically indicated. In *Cobbs* v. *Grant, supra,* 8 Cal.3d at page 244, the Supreme Court said that a "mini-course in medical science is not required"; yet that is the inevitable result of the rule proposed by plaintiff.

Another difficulty with the rule proposed by plaintiff is that it tends to suggest that a physician should defer his or her medical judgment to the patient's wishes. A physician obviously cannot compel a patient to undergo a recommended medical procedure and must accede to the patient's decision in that regard. (*Cobbs* v. *Grant, supra,* 8 Cal.3d at pp. 242-243.) But a

physician should not prescribe a procedure which is not medically indicated simply because the patient desires it. (See *Whitlow* v. *Board of Medical Examiners* (1967) 248 Cal.App.2d 478, 485 [56 Cal.Rptr. 525]; see also Bus. & Prof. Code, § 725.) It would be anomalous to create a legally imposed duty which would require a physician to disclose and offer to a patient a medical procedure which, in the exercise of his or her medical judgment, the physician does not believe to be medically indicated.

■ While we agree with the *Scalere* court that there is no general duty of disclosure with respect to nonrecommended procedures, we do not conclude, nor did the *Scalere* court, that there can never be such a duty. In an appropriate case there may be evidence that would support the conclusion that a doctor should have disclosed information concerning a nonrecommended procedure.[5] In *Cobbs* v. *Grant, supra*, 8 Cal.3d at pages 244 and 245, the court held that a physician has a legal duty to make certain minimum disclosures with respect to recommended medical procedures. The high court added: "Beyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances." (*Ibid.*) It follows that even though a physician has no general duty of disclosure with respect to nonrecommended procedures, he nevertheless must make such disclosures as are required for competent practice within the medical community.

It is to that question that we finally turn. ■ "The standard of skill, knowledge and care prevailing in a medical community is ordinarily a matter within the knowledge of experts." (*Folk* v. *Kilk* (1975) 53 Cal.App.3d 176, 185 [126 Cal.Rptr. 172].) Where a medical process or procedure is not a matter of common knowledge, expert testimony is required to show that a doctor breached the standard of care of the medical community. (*Ibid.* See also *Cobbs* v. *Grant, supra*, 8 Cal.3d at p. 238.) ■ Plaintiff's expert offered the opinion that Dr. Field should have recommended a C.T. scan and should have explained his reasons for the recommendation. Plaintiff's expert did not, however, opine that Dr. Field should have disclosed and explained a procedure which was not medically indicated. Moreover, contrary to plaintiff's expert, the jury found on substantial counterexpert evidence that Dr.

---

[5]For example, in *Jamison* v. *Lindsay* (1980) 108 Cal.App.3d 223 [166 Cal.Rptr. 443], a cystic mass was removed from the patient's ovary and sent to the pathology department. The pathologist discovered both mature and immature tissue in the mass. He was aware that many pathologists believed immature tissue to be potentially malignant, but he reported to the surgeon that the mass was benign without advising that he found immature tissue or that some pathologists believed that to be a sign of potential malignancy. Although the Court of Appeal affirmed a defense verdict on general negligence principles, it indicated that upon proper request instructions on the duty of disclosure would have been appropriate. (*Id.* at p. 231.) The *Scalere* court distinguished the *Jamison* dictum on the ground that it involved an unusual "two divergent schools of thought" situation. (211 Cal.App.3d at p. 1451.)

Field was not negligent in failing to recommend a C.T. scan and plaintiff presented no expert evidence that under those circumstances some form of disclosure was required of a competent emergency medicine specialist.[6] We do not find the diagnosis and treatment of neurological disorders, nor the standard of practice of an emergency medicine specialist with respect to neurological symptoms, to be matters of such common knowledge that expert testimony is unnecessary. Here, as we have noted, there was no expert testimony from either side that a physician should disclose and explain a procedure that was not medically indicated. Accordingly, we conclude that under the circumstances the trial court did not err in refusing to submit a modified "informed consent" theory to the jury.

### DISPOSITION

The judgment is affirmed.

Sims, J., and Scotland, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 23, 1992.

---

[6]Plaintiff's primary theory of liability was the claim that defendants should have recommended an immediate imaging study and this claim was based upon the conduct of both Dr. Field and Dr. Gardner, the neurologists with whom he conferred. Plaintiff concedes that as a mere consultant Dr. Gardner did not owe a duty of disclosure and the contention on appeal is made solely with respect to the conduct of Dr. Field. (See *Townsend* v. *Turk, supra,* 218 Cal.App.3d at p. 287.)