[No. B077655. Second Dist., Div. Five. June 7, 1994.]

HARRY JAMBAZIAN, Plaintiff and Appellant, v.
JOSEPH BORDEN, Defendant and Respondent.

838

COUNSEL

Lloyd W. Reed for Plaintiff and Appellant.

B. Elliot Johnson and Donna Vesseghi for Defendant and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiff, Harry Jambazian, appeals from a summary judgment in favor of defendant, Joseph Borden, D.P.M., on a complaint for medical malpractice. We conclude plaintiff's failure to present legally admissible opinion testimony to controvert that submitted by defendant warranted summary judgment be granted on the medical negligence and informed consent claims. In so concluding, we determine that plaintiff had a responsibility to present opinion testimony that he suffered from diabetes by a properly qualified medical witness in his summary judgment opposition to controvert defense evidence that he had no diabetic condition. Further, plaintiff had a duty to present properly qualified medical opinion evidence that his alleged diabetic condition created surgical risks other than those related by defendant prior to the procedure. This is because the existence of a diabetic condition was a factual predicate of plaintiff's claim he was not properly informed of the effect of surgery because he had diabetes. We affirm.

## II. BACKGROUND

The complaint sought damages for causes of action for negligence (first) and lack of informed consent (second) for injuries plaintiff allegedly suffered as a result of surgery performed on October 27, 1989, at Northridge Hospital and for failure to fully inform him of the consequences of the procedure.[1] Defendant answered the complaint and moved for summary judgment on the grounds the action lacked merit and contained no triable issues of material fact.

[1]The complaint named Northridge Hospital Medical Center as a defendant. Plaintiff filed a written request to dismiss Northridge Hospital from the action on September 29, 1992.

A. *The Moving Papers*

In support of the motion, defendant presented: plaintiff's deposition testimony; exhibits; defendant's declaration; and the declarations of two other physicians. Defendant declared that he has been a board certified podiatric surgeon since 1982. He initially saw plaintiff on June 23, 1989, for a callous formation at the base of the fourth metatarsal on his right foot. Plaintiff made four office visits to see defendant between June 27 and September 28, 1989, for conservative care of the condition. On October 26, 1989, defendant met with plaintiff and "explained the procedures and risks involved with an ostectomy . . . ." Defendant obtained written consent to perform an ostectomy of the fourth metatarsal head of plaintiff's right foot. Defendant and plaintiff discussed the possibility that a postoperative infection might result.

On October 27, 1989, defendant performed an ostectomy of the fourth metatarsal head of the right foot. The surgery was uneventful and plaintiff was discharged October 29, 1989. On November 1, 1989, plaintiff went to defendant's office with redness and symptoms which indicated a post-operative infection had developed. Defendant took X-rays and prescribed Cipro, an appropriate antibiotic for osteomyelitis. Plaintiff returned to the office the following day still showing signs of infection. He was then sent to Northridge Hospital where Dr. Dreyer, an infectious disease specialist, ordered intravenous antibiotics and a sterile dressing was placed on plaintiff's foot. According to defendant, "[m]arked improvement was clinically demonstrated within 24 hours." Plaintiff was transferred to Glendale Adventist Hospital for further treatment under a board certified orthopedist. Defendant examined plaintiff last on February 28, 1990. At that time, there was no infection and a bone scan was normal. Doctors at the University of California, Los Angeles (UCLA) had discontinued antibiotics. According to defendant, he exercised the degree of medical skill and care established for practicing podiatric surgeons in Los Angeles County when treating plaintiff. He thoroughly explained to plaintiff the procedures and risks involved.

Jay Shuken, D.P.M., a physician and surgeon, board certified in podiatric surgery and orthopedics, declared: "The consensual discussions indicated in the medical records and the written consent signed by [plaintiff] on October 26, 1989, demonstrate that full consent was obtained, adequate to satisfy the standard of care in the community." He further declared that based on the pertinent medical records, the surgery performed on plaintiff, the post-operative diagnosis, referral, and follow-up were within the standard of care in the community. Further, plaintiff testified at his deposition defendant informed him of the risks and hazards of having surgery including the possibility of an infection. Defendant advised him there "could be some

bleeding . . . and some infection." Plaintiff further testified he voluntarily signed the consent form after being advised of all risks and hazards of the surgery. The consent form stated in part: "[¶] 5. The nature and purpose of the operations, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me. I acknowledge that no guarantee or assurance has been given by anyone as to the results that may be obtained." The consent forms contained checks indicating the following complications or affects might occur: swelling, injury, suture reaction, recurrence, stiffness, delayed healing, scar, operate again, numbness, flail toe, medication reaction, infection, and rotation.

### B. *The Opposition*

In opposition to the motion, plaintiff declared he is a diabetic. He had been advised that the diabetic condition impaired circulation of blood and compromised the body's ability to heal wounds. Plaintiff's declaration did not identify the health care professional who made the diabetes diagnosis. Plaintiff's declaration did not state defendant ever made a diabetes diagnosis. Although plaintiff stated in his first office visit that he was a diabetic, his medical records failed to note the condition. Defendant did not advise plaintiff that the proposed surgery was made more hazardous by virtue of the diabetic condition or that if there was an infection there was a danger of having his leg amputated. There was no notation in the consent form about diabetic condition and risks. If plaintiff had been advised about the risks associated with being a diabetic, he would not have consented to surgery. He denied that his condition improved at Northridge Hospital. Plaintiff was advised at Glendale Adventist Hospital that his leg would probably have to amputated. Although the leg was not amputated, the fear of having it done aggravated an existing manic-depressive disorder. The opposition did not contain any evidence which indicated what additional risks should have been imparted by defendant to plaintiff prior to the surgery.

### C. *Defendant's Reply*

In reply, defendant asserted he established the absence of a breach of duty of care. Further, the reply argued plaintiff failed to provide opinion testimony that defendant's conduct fell below the standard of care with respect to the negligence cause of action. As for the lack of informed consent, defendant claimed there was no causation and the evidence established that plaintiff was informed of the risk of postoperative infection and gave his consent to surgery. Defendant also presented the declaration of Russell A. Klein, M.D., an infectious disease specialist who had reviewed plaintiff's medical records from several sources, including those kept by defendant, UCLA, Brotman

Memorial Hospital, and several other physicians and hospitals. Dr. Klein declared: "A post-operative infection is a risk inherent in any surgery. That [plaintiff] had a borderline diabetic condition does not contraindicate the surgery performed by [defendant] whatsoever. In fact, review of medical records indicated [plaintiff] had multiple normal blood sugars and no evidence of any diabetes. The records indicate that informed consent was properly obtained from [plaintiff], and all relevant risks and hazards of the procedure of October 27, 1989, including infection, were explained to the [plaintiff]. Furthermore, [plaintiff] was examined by an independent doctor for the specific purpose of being cleared for the surgery, prior to the ostectomy, at Northridge Hospital. Again, [plaintiff] was cleared for surgery, with no contraindications present, by Dr. Madhu Mody on October 27, 1989." In Dr. Klein's opinion, defendant acted at all times within the standard of care and did not cause or contribute to any of plaintiff's injuries. To sum up, defendant's evidence demonstrated plaintiff did not have diabetes and all of the risks of the surgery were related to him.

### D. *The Ruling*

In the summary judgment opposition, plaintiff declared he suffered from diabetes. As noted previously, the existence of this illness was essential to his informed consent theory. In the reply, defendant objected to any opinion testimony by plaintiff, a layperson, concerning his medical condition. In its written analysis as to why the summary judgment motion was granted, the law and motion judge indicated plaintiff had failed to present a "counter declaration from [an] expert." The formal order granting summary judgment indicated the court relied on the declarations filed by defendant and two other doctors.

### III. DISCUSSION

### A. *Standard of Review*

A motion for summary judgment will be granted if the moving papers establish that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[2] The law, as it was in effect in 1993 when the summary judgment motion was filed and granted,[3] described how a trial court was to consider such a request by a defendant as follows: "For purposes of motions for

---

[2]All further statutory references are to the Code of Civil Procedure.

[3]The summary judgment was entered on April 15, 1993. The Legislature had amended section 437c effective January 1, 1993. (Stats. 1992, ch. 1348.)

summary judgment . . . : [¶] (2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action." (§ 437c, former subd. (n)(2).) An appellate court determines de novo whether there is a genuine issue of material fact and the moving party was entitled to summary judgment as a matter of law. (*Wilson* v. *Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

### B. *There Are No Triable Issues of Material Fact*

■ Defendant presented opinion testimony that he did not breach the standard of care of the medical community in diagnosing and treating plaintiff. In response, plaintiff did not offer any opinion evidence to contradict these declarations. He also has not presented any arguments on this issue on appeal. The Court of Appeal has held, " 'The standard of skill, knowledge and care prevailing in a medical community is ordinarily a matter within the knowledge of experts.' [Citation.]" (*Vandi* v. *Permanente Medical Group, Inc.* (1992) 7 Cal.App.4th 1064, 1071 [9 Cal.Rptr.2d 463].) Whether the standard of care in the community has been breached presents the basic issue in a malpractice action and can only be proved by opinion testimony unless the medical question is within the common knowledge of laypersons. (*Landeros* v. *Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324]; *Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 236 [104 Cal.Rptr. 505, 502 P.2d 1]; *Vandi* v. *Permanente Medical Group, Inc., supra,* 7 Cal.App.4th at p. 1071.) Plaintiff's absence of opinion evidence on this issue was fatal to his cause of action. (*Willard* v. *Hagemeister* (1981) 121 Cal.App.3d 406, 412 [175 Cal.Rptr. 365].) Accordingly, the issue of defendant's negligence in the care and treatment of plaintiff was properly resolved when the summary judgment motion was granted.

■ Plaintiff contends, however, the trial court erred in granting summary judgment because triable issues of material fact existed as to whether sufficient information was conveyed to him to consent to surgery, given that he had a diabetic condition. As noted previously, the only evidence he suffered from diabetes was plaintiff's objected-to declaration. ■ In *Cobbs* v. *Grant, supra,* 8 Cal.3d at page 243, the Supreme Court held: "[A]s an integral part of the physician's overall obligation to the patient there is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in

each." *Cobbs* further concluded: "[T]he patient's right of self-decision is the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision." (*Id.* p. 245.) In short, a physician has a legal duty to disclose to the patient all material information. (*Arato* v. *Avedon* (1993) 5 Cal.4th 1172, 1186 [23 Cal.Rptr.2d 131, 858 P.2d 598].) ■ The California Supreme Court has noted, "Material information is that which the physician knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding to accept or reject the recommended medical procedure. [Citations.] To be material, a fact must also be one which is not commonly appreciated. [Citation.] If the physician knows or should know of a patient's unique concern or lack of familiarity with medical procedures, this may expand the scope of required disclosure. [Citation.]" (*Truman* v. *Thomas* (1980) 27 Cal.3d 285, 291 [165 Cal.Rptr. 308, 611 P.2d 902].) When a given procedure inherently involves a known risk of death or serious bodily injury, at a minimum, a doctor has a duty to disclose the potential risks of harm and to explain in lay terms the complications that might occur. (*Cobbs* v. *Grant, supra,* 8 Cal.3d at p. 244.) The doctor is also required to reveal any additional information as a skilled practitioner in good standing would provide under similar circumstances. (*Id.* at pp. 244-245.) If a physician does not make the minimal disclosure, he or she is liable for all injuries sustained by the patient during the treatment whether it was negligent or not. (*Willard* v. *Hagemeister, supra,* 121 Cal.App.3d at p. 418.)

■ In this case, the controversy centers around whether defendant established as a matter of law that he had no duty to disclose information about diabetes to plaintiff. Plaintiff claims the following facts from his declaration were sufficient to defeat the summary judgment because they created triable issues of material fact concerning whether he was fully informed before consenting to surgery. Plaintiff was told he had diabetes. Of consequence, plaintiff never claimed defendant made a diabetes diagnosis. Rather, plaintiff's declaration vaguely stated: "I have been advised that I suffer from a medical condition known as diabetes. I have been advised such a condition impairs the circulation of blood in my body and compromises the ability of my body to heal wounds inflicted on it." Plaintiff never identified a properly qualified physician who diagnosed the diabetes. Plaintiff advised defendant he had diabetes. Defendant failed to note in plaintiff's medical records that plaintiff was diabetic. Defendant did not advise plaintiff that the

surgery was made more hazardous by the diabetic condition and an infection after the surgery created a danger that his leg would have to be amputated. If plaintiff had been advised of the facts, he would not have consented to the procedure. Plaintiff contends a question of fact remains as to whether defendant gave him "sufficient information" as to the possible risks and complications associated with surgery on a diabetic so that he could intelligently decide whether to proceed with that mode of treatment. Defendant counters, as he did in the trial court, the trial court properly determined there was no merit to plaintiff's action because the evidence established as a matter of law that no duty was breached and an informed consent to the surgery was in fact given. Defendant further argues he had no duty to disclose any risks associated with the surgery concerning diabetes because Dr. Klein's declaration shows the absence of any evidence in plaintiff's medical records of a diabetic condition.[4]

We agree with defendant that Dr. Klein's declaration established there was no merit to plaintiff's claim he was not fully informed on the hazards of surgery on a diabetic because there is no competent evidence that he in fact had diabetes. (§ 437c, former subd. (n)(2).) As noted previously, at the time the summary judgment was entered, section 437c, former subdivision (n)(2) provided in part: "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action." The declarations submitted by defendant which indicated there were no identifiable symptoms of diabetes were sufficient to require plaintiff to produce opinion evidence on the issue of whether he in fact had a diabetic condition in order to defeat the summary judgment motion. (§ 437c, former subd. (n)(2).)

Moreover, we disagree with plaintiff's contention the trial court erred in concluding opinion testimony was needed to defeat the summary

[4]Based on a review of a number of plaintiff's medical records from various sources including those of defendant, Dr. Klein declared: "A post-operative infection is a risk inherent in any surgery. That [plaintiff] had a borderline diabetic condition does not contraindicate the surgery performed by [defendant] whatsoever. In fact, review of medical records indicated [plaintiff] had multiple normal blood sugars and no evidence of any diabetes. The records indicate that informed consent was properly obtained from [plaintiff], and all relevant risks and hazards of the procedure of October 27, 1989, including infection, were explained to the [plaintiff]. Furthermore, [plaintiff] was examined by an independent doctor for the specific purpose of being cleared for the surgery, prior to the ostectomy, at Northridge Hospital. Again, [plaintiff] was cleared for surgery, with no contraindications present, by Dr. Madhu Mody on October 27, 1989."

judgment motion because it is not required in informed consent cases. Plaintiff relies primarily upon *Arato v. Avedon, supra*, 5 Cal.4th at page 1191, *Cobbs v. Grant, supra*, 8 Cal.3d at page 243, and *Willard v. Hagemeister, supra*, 121 Cal.App.3d at page 406, to support his theory. In *Arato*, the survivors of a patient brought a claim against his physicians for failure to inform the decedent fully about the low statistical life expectancy of persons diagnosed with pancreatic cancer. (*Arato v. Avedon, supra*, 5 Cal.4th at p. 1176.) The family claimed at trial that had the decedent been fully informed he would have foregone treatment and tended to various financial affairs. (*Id.* at p. 1179.) After a defense verdict, the plaintiffs contended that the trial court should not have allowed opinion testimony concerning the standard of medical practice cautioning against disclosing to persons suffering from pancreatic cancer specific life expectancy data, unless the patient specifically requested the information. (*Id.* at p. 1190.) The plaintiffs offered their own opinion testimony countering the defendants' evidence. (*Ibid.*) Our Supreme Court considered the roles of opinion witnesses on the issue of the duty to disclose. (*Id.* at p. 1184.) The court concluded the trier of fact has a paramount role in informed consent cases and held, "[Q]uestions such as whether the danger posed by a failure to disclose a particular risk is remote, whether the risk was or was not commonly known, and whether circumstances unique to a given case support[] a duty of disclosure [are] matters for the jury to decide." (*Ibid.*) With respect to opinion evidence in informed consent cases, *Arato* reiterated the Supreme Court's prior holding in *Cobbs* that such testimony in informed consent cases is limited. (*Ibid.*) *Arato* stated: "We underline the limited and essentially subsidiary role of expert testimony in informed consent litigation. As we cautioned in *Cobbs v. Grant, supra*, 8 Cal.3d 229, a rule that filters the scope of patient disclosure entirely through the standards of the medical community ' "arrogate[s] the decision [of what to disclose] . . . to the physician alone." ' [Citation.] We explicitly rejected such an absolute rule as inimical to the rationale and objectives of the informed consent doctrine; we reaffirm that position. Nevertheless, . . . there may be a limited number of occasions in the trial of informed consent claims where the adequacy of disclosure in a given case may turn on the standard of practice within the relevant medical community. In such instances, expert testimony will usually be appropriate." (*Id.* at p. 1191.)

In *Cobbs*, the Supreme Court stated the physician's function in terms of disclosure consists of informing the patient of: the risks inherent in the procedure; the risks of a decision not to undergo treatment; and the probability of successful outcome of the treatment. (*Cobbs v. Grant, supra*, 8 Cal.3d at p. 243.) The court reasoned there was no expert skill required to weigh these risks against individual subjective fears and hopes of the patient because such an evaluation and the ensuing "decision [was] a nonmedical

judgment reserved to the patient alone." (*Ibid.*) In determining the reasonableness of disclosure, the doctor's duty was not bound to the customs of physicians practicing in the community because in the court's words, "[u]nlimited discretion in the physician is irreconcilable with the basic right of the patient to make the ultimate informed decision regarding the course of treatment to which he [or she] knowledgeably consents to be subjected." (*Ibid.*)

*Willard* v. *Hagemeister, supra,* 121 Cal.App.3d at pages 409-416 was a dental malpractice action in which the plaintiff failed to present properly qualified opinion testimony in the summary judgment opposition. This court concluded the absence of declarations on the issue precluded the plaintiff's negligence claim. (*Id.* at p. 415.) However, this court further held that the absence of a declaration by a physician or other qualified witness was not fatal to the lack of informed consent claim as to whether the plaintiff was given sufficient information as to the nature of a root canal and crowning. (*Ibid.*)

The problem with plaintiff's reliance on *Arato, Cobbs,* and *Willard* is none of those decisions involved an issue of whether the plaintiff in fact had a particular medical condition which required disclosure concerning the particular range of effects of a proposed procedure on the patient. Moreover, no decision supports plaintiff's implicit argument that in informed consent cases, a lay witness may render a medical opinion as to whether a patient has a condition which requires particular advice be given as to risks of a surgery. ■ The Court of Appeal has held, "One of the fundamental theories of the law of evidence is that witnesses must ordinarily testify to facts, not opinions." [Citation.] (*People* v. *Williams* (1992) 3 Cal.App.4th 1326, 1332 [5 Cal.Rptr.2d 130].) There is an exception to this rule for witnesses offering opinions (Evid. Code, § 801[5]) and for lay testimony in limited situations. (Evid. Code, § 800.[6]) However, when the witness is a layperson, he or she may not testify on matters which are not proper subjects

---

[5]Evidence Code section 801 provides: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

[6]Evidence Code section 800 provides: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony."

of lay opinion testimony. (3 Cal.App.4th at pp. 1332-1333.) The Court of Appeal held: "In every case the court must be guided by the general rules governing the use of expert testimony. If the fact sought to be proved is one within the general knowledge of laymen, expert testimony is not required; otherwise the fact can be proved only by the opinions of experts." (*Truman v. Vargas* (1969) 275 Cal.App.2d 976, 982 [80 Cal.Rptr. 373].) ▮ The diagnosis of diabetes, its magnitude, scientific characteristics, and the inherent risks associated with the condition are not matters of such common knowledge that opinion testimony is unnecessary in informed consent litigation to establish defendant should have disclosed the risks of surgery on a diabetic to plaintiff *when there is no medical evidence that the illness exists.* (Evid. Code §§ 702,[7] 800, 801; *Vandi v. Permanente Medical Group, Inc., supra,* 7 Cal.App.4th at pp. 1071-1072 [opinion testimony required where diagnosis and treatment of neurological disorder and standard of practice are not matters within common knowledge].)

Plaintiff has produced no evidence that he has any medical knowledge or expertise that would permit him to diagnose a diabetic condition and the risks of surgery on a patient suffering from diabetes. Moreover, he produced no medical records or any other scientific information which established he was in fact suffering from diabetes. The only medical evidence concerning the condition was produced by defendant and showed the absence of any evidence of diabetes and multiple normal blood sugars. A physician has no duty to disclose and explain risks that are not medically indicated. (*Vandi v. Kaiser Permanente Medical Group, Inc., supra,* 7 Cal.App.4th at p. 1072.) Because there was competent opinion evidence by medical professionals that plaintiff did not have diabetes and no admissible evidence to the contrary, the trial court properly made the determination plaintiff could not rely on his lay opinion to create a triable issue of material fact on this particular issue. (Evid. Code, §§ 702, 800, 801.) Further, even if he had diabetes, plaintiff should have produced properly qualified opinion evidence that his condition created risks other than those identified by defendant prior to the surgery.

The foregoing constitutes the limited role opinion testimony plays in informed consent cases. In *Arato v. Avedon, supra,* 5 Cal.4th at page 1190, our Supreme Court referred to "the proper, albeit limited, role of expert testimony in informed consent cases." In *Arato,* our Supreme Court held: ▮ "[T]here may be a limited number of occasions in the trial of

---

[7]Evidence Code section 702 provides: "(a) Subject to Section 801, the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter. Against the objection of a party, such personal knowledge must be shown before the witness may testify concerning the matter. [¶] (b) A witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony."

informed consent claims where the adequacy of disclosure in a given case may turn on the standard of practice within the relevant medical community. In such instances, expert testimony will usually be appropriate."[8] (5 Cal.4th at p. 1191.) ■ This case presents a slightly different situation where properly qualified opinion testimony is essential in the summary judgment context to an informed consent claim. The entire factual predicate of plaintiff's theory is that he suffered from diabetes to such a degree defendant had a "duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially in each." (*Cobbs* v. *Grant, supra,* 8 Cal.3d at p. 243.) Defendant's evidence demonstrated no diabetes was present. Defense counsel specifically objected to plaintiff's lay opinion concerning his diabetic condition. The experienced law and motion judge sustained defendant's objections by noting no "expert" opinion was presented in a counterdeclaration submitted by plaintiff. Therefore, this case involves a second limited situation, other than the one referred to in *Arato,* where opinion testimony was admissible and pertinent to the resolution of informed consent litigation. Accordingly, the trial court properly determined defendant was entitled to judgment under the circumstances of this case.

To sum up, given defendant's properly qualified opinion evidence filed in support of the summary judgment motion, plaintiff had the responsibility to present evidence on two narrow points in this case. First, he had to submit a declaration by a properly qualified witness that plaintiff suffered from diabetes.[9] Second, he should have presented similar evidence that the purported diabetic condition created surgical risks not identified prior to the surgery by defendant. Had such evidence been produced, then a triable issue of fact would have been raised which would permit a trier of fact to determine if plaintiff had been given " 'adequate information to enable an intelligent choice,' a peculiarly fact-bound assessment which juries are especially well-suited to make. [Citation.]" (*Arato* v. *Avedon, supra,* 5 Cal.4th at p. 1186.)

---

[8]Because we determine that plaintiff failed to sustain his burden of proof that he had diabetes (§ 437c, subd. (n)(2)), we need not address the issue of whether defendant presented uncontroverted evidence the advice given was within the standard prevalent in the particular medical community at issue.

[9]We do not imply that the sole evidence that an informed consent plaintiff must present in every case is a declaration containing the opinion of a properly qualified physician or other professional health care provider. For example, if there was evidence defendant had stated plaintiff had diabetes, then such an admission plus the evidence of the physician's qualifications would have been sufficient to prove the existence of a diabetic condition. In the present case, this would have sustained plaintiff's burden of responding to defendant's evidence concerning the existence of a diabetic condition created by section 437c, subdivision (n) as it was in effect in 1993. However, no such evidence was submitted by plaintiff.

## IV. DISPOSITION

The judgment is affirmed. Defendant, Joseph Borden, shall recover his costs on appeal from plaintiff, Harry Jambazian.

Grignon, J., and Armstrong, J., concurred.