[No. A093197. First Dist., Div. Three. Aug. 29, 2002.]

PAUL M. BETTERTON, Plaintiff and Appellant, v.
JONATHAN LEICHTLING, Defendant and Respondent.

**COUNSEL**

Edward Joseph Nevin for Plaintiff and Appellant.

Hassard Bonnington, B. Thomas French, Joseph C. Gharrity and Robert S. Willoughby for Defendant and Respondent.

**OPINION**

**PARRILLI, J.—** ▪ It is settled that a doctor's duty to disclose serious potential complications to a patient before performing a medical procedure is

not defined by the standards of the medical community. (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1191 [23 Cal.Rptr.2d 131, 858 P.2d 598] (*Arato*).) However, whether a risk of serious complications exists can be a question appropriately reserved for resolution by medical experts. (*Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 848-849 [30 Cal.Rptr.2d 768].) Here, we consider this distinction in connection with jury instructions covering both an informed consent claim and a general medical negligence claim.

Paul M. Betterton sued Dr. Jonathan Leichtling for malpractice. The jury returned a defense verdict. On appeal, Betterton contends (1) the court erroneously rejected his proposed jury instruction on informed consent; and (2) the instructions the court did give on negligence and informed consent resulted in a miscarriage of justice. We conclude that Betterton's proposed instruction, while flawed, was a more accurate statement of the law than the instructions given by the court, which conflicted with the principles discussed in *Arato* and other cases. However, under the circumstances of this case the instructional error did not prejudice Betterton. Accordingly, we affirm the judgment.

## BACKGROUND

Betterton consulted Dr. Leichtling to explore the option of surgery for a hernia in his groin. Dr. Leichtling performed the surgery on an outpatient basis. That night, Betterton experienced intense pain in his scrotum and testicle. He called Dr. Leichtling, who prescribed a different pain medication. During the first postoperative visit, a week after the surgery, Dr. Leichtling noted that Betterton was experiencing residual pain and bruising caused by bleeding from the area of the surgery, which had drained into his scrotum.

At an appointment two weeks later, Dr. Leichtling noted that Betterton still had swelling in his scrotum caused by blood drainage. Dr. Leichtling saw Betterton after another two weeks, and noted that his testicle remained abnormally firm. However, Dr. Leichtling recommended that Betterton return to work the following week. Betterton did not see Dr. Leichtling after that date. His pain prevented him from returning to work. Although he went to a pain clinic, and tried acupuncture and various medications, Betterton was never able to resume his job as a FedEx courier.

During a preoperative assessment the day before his surgery, Betterton had told a nurse that he customarily took about four aspirin a week, and had been taking two aspirin every four hours the last two weeks for cold and flu symptoms. The nurse called an anesthesiologist to see if Betterton's aspirin

use might cause any bleeding complications. The anesthesiologist reassured the nurse, and she did not warn Betterton about any increased danger of bleeding due to his aspirin use. Dr. Leichtling did not remember discussing aspirin with Betterton; he would not have considered it a significant issue. However, Betterton remembered the anesthesiologist mentioning his aspirin use just before surgery, and assuring Betterton that he would speak to Dr. Leichtling about it and "they would take care of it."

Betterton called a blood specialist to testify about the effects of aspirin and its risks for surgical patients. Dr. Leichtling called numerous experts, including himself, to testify on that subject and on the nature of Betterton's surgery and its complications.

Betterton's theories at trial were (1) Dr. Leichtling was negligent in deciding to go ahead with the surgery, and (2) Dr. Leichtling failed to obtain Betterton's informed consent to the operation because he did not advise Betterton of the risk of increased bleeding due to aspirin use, and the option of delaying surgery to allow the blood platelets to restore themselves. These two theories are reflected in Betterton's proposed jury instruction, which is at issue on appeal:

"Plaintiff seeks to recover on either of two separate grounds:

"(1) That Dr. Leichtling was negligent;

"or

"(2) That Dr. Leichtling failed to obtain plaintiff's inform[e]d consent to the surgery.

"As to the allegation of negligence, you must determine the standard of professional learning, skill and care required of the defendant only from the opinions of the physicians including the defendant who have testified as expert witnesses as to such standard.

"You should consider each such opinion and should weigh the qualifications of the witness and the reasons given for his or her opinion. Give each opinion the weight to which you deem it entitled.

"You must resolve any conflict in the testimony of the witnesses by weighing each of the opinions expressed against the others, taking into consideration the reasons given for the opinion, the facts relied upon by the witness, and the relative credibility, special knowledge, skill, experience, training and education of the witness.

"As to the allegation of failure to obtain informed consent, you need not determine the physician's duty to disclose only from the opinions of the physicians who have testified as expert witnesses. You should determine what material information the defendant knew or should have known would be regarded as significant by a reasonable person in the plaintiff's position when he decided to accept the recommended surgery."

The trial court rejected this instruction, and over Betterton's objection gave the standard version of BAJI No. 6.30, as follows:

"You must determine the standard of professional learning, skill and care required of the defendant only from the opinions of the physicians including the defendant who have testified as expert witnesses as to such standard.

". . . You should consider each such opinion and should weigh the qualifications of the witness and the reasons given for his or her opinion. Give each opinion the weight to which you deem it entitled.

"You must resolve any conflict in the testimony of the witnesses by weighing each of the opinions expressed against the others, taking into consideration the reasons given for the opinion, the facts relied upon by the witness, and the relative credibility, special knowledge, skill, experience, training and education of the witness."

The court also gave, with Betterton's approval, the following version of BAJI No. 6.11:

"Except as hereinafter explained, it is the duty of the physician to disclose to the patient all material information to enable the patient to make an informed decision regarding the proposed operation or treatment.

"Material information is information which the physician knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding to accept or reject a recommended medical procedure. To be material a fact must also be one which is not commonly . . . appreciated.

"There is no duty to make disclosure of risks where the procedure is simple and the danger remote and commonly understood to be remote.

"Likewise, there is no duty to discuss minor risks inherent in common procedures, when such procedures very seldom result in serious ill effects.

"However, when a procedure inherently involves a known risk of death or serious bodily harm, it is the physician's duty to disclose to the patient the

possibility of such outcome and to explain in lay terms the complications that might possibly occur. The physician or surgeon must also disclose such additional information as would be called for by the standard of s[k]ill and care required of the defendant under the same or similar circumstances.

"Even though the patient has consented to a proposed treatment or operation, the failure of the physician to inform the patient as stated . . . in this instruction before obtaining such consent is negligence. This negligence renders the physician subject to liability for any injury caused by the operation if a reasonably prudent person in the patient's position would not have consented to the operation if he had been adequately informed of all the significant perils."

DISCUSSION

Betterton argues that BAJI No. 6.30 is inappropriate in an informed consent case because it requires the jury to determine the duty of disclosure solely by reference to expert testimony. He contends, as he did below, that its use in his case violated the principles discussed by this court in *Daum v. SpineCare Medical Group, Inc.* (1997) 52 Cal.App.4th 1285 [61 Cal.Rptr.2d 260] (*Daum*). There, we summarized the law governing informed consent standards as follows:

"In *Cobbs* [*v. Grant* (1972)] 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1] [*Cobbs*], the court rejected the rule that the scope of disclosure in informed consent cases is measured by the custom of the medical community. 'Unlimited discretion in the physician is irreconcilable with the basic right of the patient to make the ultimate informed decision regarding the course of treatment to which he knowledgeably consents to be subjected.' (*Id.* at p. 243.) Nevertheless, *Cobbs* fashioned a two-part test that links the duty to disclose some matters to the standard of professional practice.

"First, a physician must disclose to the patient the potential of death, serious harm, and other complications associated with a proposed procedure. (*Cobbs, supra,* 8 Cal.3d at p. 244.) Expert testimony on the custom of the medical community is not necessary to establish this duty. (*Spann v. Irwin Memorial Blood Centers* (1995) 34 Cal.App.4th 644, 656 [40 Cal.Rptr.2d 360]; *Willard v. Hagemeister* (1981) 121 Cal.App.3d 406, 418 [175 Cal.Rptr. 365].) Second, '[b]eyond the foregoing minimal disclosure, a doctor must also reveal to his patient such additional information as a skilled practitioner of good standing would provide under similar circumstances.' (*Cobbs, supra,* at pp. 244–245.) Therefore, expert testimony is relevant and admissible to determine the duty to disclose matters other than the risk of death or serious

harm and significant potential complications. (*Arato, supra,* 5 Cal.4th at p. 1191; *Spann v. Irwin Memorial Blood Centers, supra,* at p. 657, fn. 13.)

"In *Arato,* the Supreme Court observed that the *Cobbs* test has been incorporated in BAJI No. 6.11, and is the accepted standard for measuring the adequacy of disclosure in informed consent cases. (*Arato, supra,* 5 Cal.4th at pp. 1190-1191.) The *Arato* court endorsed *Cobbs*'s position that the standards of the medical community do not absolutely govern the duty of disclosure. 'We underline the limited and essentially subsidiary role of expert testimony in informed consent litigation. As we cautioned in *Cobbs v. Grant, supra,* 8 Cal.3d 229, a rule that filters the scope of patient disclosure entirely through the standards of the medical community " ' "arrogate[s] the decision [of what to disclose] . . . to the physician alone." ' " (*Id.* at p. 243.) We explicitly rejected such an absolute rule as inimical to the rationale and objectives of the informed consent doctrine; we reaffirm that position.' (*Arato, supra,* at p. 1191, brackets and ellipsis in original.) However, *Arato* also reaffirmed and applied the second part of the *Cobbs* test, which is based on the standard of professional practice. '[I]n an appropriate case, the testimony of medical experts qualified to offer an opinion regarding what, if any, disclosures—in addition to those relating to *the risk of death or serious injury and significant potential complications posed by consenting to or declining a proposed treatment*—would be made to the patient by a skilled practitioner in the relevant medical community under the circumstances, is relevant and admissible.' (*Ibid.,* italics in original.) On the facts before it, the *Arato* court held expert testimony was properly admitted on the issue of whether the defendant physicians were required to disclose statistical life expectancy data associated with the cancer for which the patient was being treated. (*Id.* at pp. 1191-1192.)" (*Daum, supra,* 52 Cal.App.4th at pp. 1301-1302.)

In *Arato,* the court noted that BAJI No. 6.30 properly applied to the plaintiffs' negligence claim, and any error in combining that instruction with BAJI No. 6.11 was invited because the plaintiffs had approved the instructions. (*Arato, supra,* 5 Cal.4th at p. 1192, fn. 12.) In *Daum,* failure to obtain informed consent was the plaintiffs' only theory and they objected to BAJI No. 6.30. The disclosure at issue in *Daum* was required by statute and regulation, and in those circumstances we held it was reversible error to require the jury to consider only expert testimony in deciding whether the defendants had complied with their duty of disclosure. (*Daum, supra,* 52 Cal.App.4th at pp. 1303-1304, 1318.)

In this case, Betterton did object to BAJI No. 6.30, but he also pursued a negligence claim to which the instruction properly applied. His proposed

instruction was an attempt to distinguish between the negligence and informed consent theories, advising the jury to consider only the expert testimony to determine the standard of care for purposes of the negligence claim, but not to "determine the physician's duty to disclose only from the opinions of the physicians who have testified as expert witnesses." This proposed instruction was consistent with the BAJI use note, which states:

"It is suggested that, in cases in which the plaintiff seeks recovery of damages not only on a claim of malpractice in treating or operating but also on a claim of defendant's failure to secure an informed consent to the treatment or operation, BAJI 6.30 be preceded by the following:

" 'Except as to the claim of defendant's failure to disclose all relevant information necessary for the plaintiff to make an informed decision regarding the proposed [treatment] [operation], you are instructed that:' " (Use Note to BAJI No. 6.30 (9th ed. 2002) p. 153.)

Betterton's proposal was preferable to the combination of BAJI Nos. 6.11 and 6.30 given by the trial court, which encouraged the jury to evaluate Dr. Leichtling's duty of disclosure solely by reference to the expert testimony. This guidance was directly contrary to the principles adopted by our Supreme Court in *Cobbs* and *Arato*. Nevertheless, Betterton's proposed instruction failed to fully explain the role of expert testimony in resolving his informed consent claim. Whether to disclose a significant risk is not a matter reserved for expert opinion. Whether a particular risk exists, however, may be a matter beyond the knowledge of lay witnesses, and therefore appropriate for determination based on the testimony of experts. (*Jambazian v. Borden, supra*, 25 Cal.App.4th 836, 848-849 [whether plaintiff suffered from diabetic condition posing risks in surgery was subject to proof only through experts].) Here, the effect of Betterton's aspirin use on the risk of surgical complications was a subject beyond the general knowledge of lay people. Therefore, the jury should have relied only on expert testimony when it determined whether the use of aspirin causes significant risks in surgery. (*Id.* at p. 849.)[1]

The jury must have decided that Dr. Leichtling did not ignore a significant risk, because it found in a special verdict that he was not negligent in

---

[1]A proper instruction in this case might have read as follows (we have borrowed from the draft informed consent instruction recently circulated by the Judicial Council Jury Instructions Task Force):

"A patient's consent to a medical procedure must be 'informed.' A patient gives an 'informed consent' only after the physician has fully explained the proposed treatment or procedure.

"A physician must explain the likelihood of success and the risks of agreeing to or refusing a medical procedure in language the patient can understand. A physician must give the patient as much information as he needs to make an informed decision. The patient must be informed

proceeding to operate despite Betterton's recent use of aspirin. Betterton's negligence claim was based solely on Dr. Leichtling's failure to account for the bleeding complications caused by aspirin. No witness offered any reason for Dr. Leichtling to ignore a serious risk. This was elective surgery and could easily have been delayed, as Betterton contended it should have been. If the jury agreed with Betterton's expert that aspirin posed a risk, the jury would have found Dr. Leichtling negligent and would have found that he failed to disclose a significant risk, even under the instructions that were given.

Accordingly, there is no ground for us to conclude that a result more favorable to Betterton was reasonably likely in the absence of the instructional error. Nor did the error prevent Betterton from placing his full case before the jury. Under these circumstances, we must deem the error harmless. (*Daum, supra*, 52 Cal.App.4th at p. 1313.)

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

---

about any risk that a reasonable person would consider important in deciding to have or not to have the proposed treatment or procedure. The physician must disclose any significant risk of death or serious injury, and any serious complications that may occur if the procedure is performed or refused. A physician is not required to explain minor risks that are not likely to occur.

"In determining whether a particular risk existed, you must rely on the expert testimony offered on that subject. However, if you find there was a significant risk of death, serious injury, or serious complications, then the physician had a duty to disclose that risk regardless of any expert opinion on the duty to disclose.

"With regard to information other than significant risks of death, serious injury, and serious complications, the physician must make any additional disclosures called for by the professional standard of skill and care. You must decide whether this standard was met based on the opinions of the physicians, including the defendant, who have testified as expert witnesses."