Filed 5/19/16  Mathews v. Benjamin CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SHARYN GAYLE MATHEWS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MELODY BENJAMIN et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B264580<br>(Super. Ct. No. 56-2014-00447830-CU-PT-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 26, 2016, be modified as follows:

1.  On page 2, the second full paragraph, beginning "The trial court granted summary judgment," is deleted, and the following paragraph is inserted in its place:

> The trial court ruled the defendants established that there was no triable issue of fact on the standard of care issue and found "they did not breach the standard of care."  But it did not grant summary judgment because the defendants did not show there was no triable issue of fact on the issue of "lack of informed consent."

2.  On page 10, line 6, the following language is inserted before the sentence beginning "Moreover, as already mentioned":

Mathews cites to her counsel's statements at the in limine hearings. But counsel's general statements made during arguments without a specific description of the actual testimony and evidence to be presented to prove the factual claims did not meet the standard for valid offers of proof. (*In re Mark C.* (1992) 7 Cal.App.4th 433, 444; *McCleery v. City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1074.)

There is no change in judgment.

Appellant's petition for rehearing is denied.

Filed 4/26/16  Mathews v. Benjamin CA2/6 (unmodified version)
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SHARYN GAYLE MATHEWS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MELODY BENJAMIN et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B264580<br>(Super. Ct. No. 56-2014-00447830-<br>CU-PT-VTA)<br>(Ventura County) |

        Plaintiff Sharyn Gayle Mathews appeals a judgment in favor of defendants Melody Benjamin, M.D., and the County of Ventura in her medical informed consent liability/wrongful death action.  The trial court properly granted defendants' motions in limine.  We affirm.

### FACTS

        Mathews is the daughter of Orville Mathews who was a patient of Dr. Melody Benjamin at the Ventura County Medical Center.  Orville Mathews was diagnosed with "stage IV rectosigmoid colon cancer with liver metastases."  In February 2013, Benjamin gave him a chemotherapy drug known as "5-FU."  Orville Mathews died a month later.

        Mathews filed a medical malpractice action against Benjamin and Ventura County.  She alleged, among other things, that Benjamin breached the

standard of care by: 1) administering 5-FU which is toxic to 16 percent of patients, and 2) not screening her father for enzyme deficiencies before using that drug.

Defendants moved for summary judgment and attached the declaration of John Glaspy, M.D. He declared that: 1) "the care and treatment provided to Orville Mathews after his symptoms were detected were all within the standard of care," 2) "5-FU is part of a very effective regimen to treat the type of cancer Orville Mathews suffered from," and 3) Orville Mathews's "condition was terminal without this chemotherapy."

The trial court granted summary judgment against Mathews. It ruled the "defendants adequately established that they did not breach the standard of care."

Mathews filed a first amended complaint alleging a wrongful death cause of action. She alleged that: 1) the "[d]efendants negligently administered 5-FU to Orville Mathews, without having him screened for the drug's toxicity and/or receiving Orville Mathews's *informed consent*"; 2) "Five-FU was toxic to [him]"; and 3) Orville Mathews died from "5-FU enzyme deficiency."

Mathews requested a jury trial. She filed a motion in limine noting that defendants intended to call Glaspy to testify. Mathews claimed that no expert testimony about "the standard of care for disclosure" should be allowed at trial because "this is an informed consent case."

Defendants filed several motions in limine. They noted that Mathews was proceeding to trial without having designated "any retained experts" and that she did not have an expert who was "qualified to opine on the standard of care as it pertains to oncology." They claimed some of the evidence she intended to raise at trial required the testimony of an expert who could testify on the standard of care. Because Mathews did not retain such an expert, they said evidence was inadmissible on whether Benjamin was liable for not advising Orville Mathews about: 1) the availability of alternative cancer treatments, 2) the success rate of the 5-FU treatment, and 3) a diagnostic screening test. Defendants also claimed Mathews's attempt to

2

introduce a videotaped deposition of an expert who would discuss the results of a study on 5-FU was inadmissible hearsay.  The trial court granted defendants' motions in limine.

At the beginning of the jury trial, Mathews moved to dismiss.  The trial court entered the following judgment:  "Plaintiff, Sharyn Gayle Mathews, having requested dismissal after an adverse trial court ruling, so that an appeal could be taken promptly, judgment is hereby entered based on the court's evidentiary rulings of May 6, 2015."

## DISCUSSION

*Defendants' Request to Dismiss This Appeal*

Defendants claim Mathews's appeal should be dismissed because she requested a judgment in their favor.  They argue she "voluntarily dismissed her first amended complaint after receiving what she viewed as adverse *in limine* rulings that 'crippled' her case."  Defendants claim this is a nonappealable consent judgment.

"[I]t is 'wasteful of trial court time' to require the plaintiff to undergo a probably unsuccessful court trial merely to obtain an appealable judgment."  (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817.)  "[T]here is an exception to the rule that a party may not appeal a consent judgment. If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal."  (*Ibid.*)  We proceed to the merits.

*Informed Consent and Alternative Treatments*

Mathews contends the trial court erred by granting a motion in limine which prevented her from introducing evidence to show Benjamin was liable under the informed consent doctrine.  She claims she should have been allowed to show liability based on Benjamin's failure to advise her father of the availability of alternative chemotherapy drug treatment.

3

Defendants contend the trial court did not err because: 1) the duty to disclose under the informed consent doctrine extends to the "recommended treatment," but not to the "disclosure of alternative treatments"; and 2) Mathews's failure to present expert testimony on the standard of care prevented her from showing liability based on the failure to disclose alternative treatments. We agree.

A medical doctor must obtain the informed consent of the patient for the type of treatment the patient will receive. (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 239.) "A medical doctor, being the expert, appreciates the risks inherent in the procedure he is prescribing, the risks of a decision not to undergo the treatment, and the probability of a successful outcome of the treatment." (*Id.* at p. 243.) "But once this information has been disclosed, that aspect of the doctor's expert function has been performed." (*Ibid.*)

"'In *Cobbs v. Grant*, *supra*, 8 Cal.3d 229, the California Supreme Court held that a physician has a duty to disclose to a patient :the available choices with respect to proposed therapy and . . . the dangers inherently and potentially involved in each."'" (*Schiff v. Prados* (2001) 92 Cal.App.4th 692, 701.) "'At minimum, a physician must disclose "the potential of death or serious harm" known to be inherent in a given procedure and an explanation in lay terms of the complications that might occur.'" (*Ibid.*)

"'With respect to . . . alternative treatments, under the doctrine of informed consent "there is no general duty of disclosure with respect to *nonrecommended* procedures . . . ."'" (*Schiff v. Prados*, *supra*, 92 Cal.App.4th at p. 701.) "'Instead, "the failure to recommend a procedure must be addressed under ordinary medical negligence standards."'" (*Ibid.*) "That is, a physician must disclose alternative treatments only to the extent it is required "for competent practice within the medical community."'" (*Ibid.*) "The standard of care prevailing in the medical community must be established by expert testimony.'" (*Ibid.*)

4

Defendants note in their motion in limine that Mathews "did not designate any retained experts" and did not have an expert who was "qualified to opine on the standard of care as it pertains to oncology." Mathews claimed that "expert testimony about the standard of care for disclosure" was not necessary because this "is an informed consent case."

The trial court could reasonably find that Mathews could not prove that the nondisclosure of alternative treatments fell below the standard of care "''for competent practice within the medical community''" without a qualified expert. (*Schiff v. Prados*, *supra*, 92 Cal.App.4th at p. 701.)

*Nondisclosure of the Success Rate of the 5-FU Treatment*

Mathews noted that Benjamin administered a "5-FU" treatment for her father. She claimed a physician must make certain specific success rate disclosures to patients when administering this treatment.

The trial court granted defendants' motion in limine. It ruled that Mathews could not introduce evidence that Benjamin had a duty to tell patients that the 5-FU treatment had a "55 to 67 percent . . . success rate for extending life" without calling an expert. Mathews claims "5-FU is only slightly more effective than the alternatives, 55% to 40%-45%."

Testimony from a qualified expert was required to prove this particular advice to patients was part of the required standard of care in the oncology "medical community." (*Schiff v. Prados*, *supra*, 92 Cal.App.4th at p. 701.) Evidence on the specific success rates of various treatments is a subject "beyond the general knowledge of lay people." (*Betterton v. Leichtling* (2002) 101 Cal.App.4th 749, 756.) Absent expert testimony, such evidence is inadmissible. (*Ibid.*) Evidence on whether a doctor should disclose "statistical life expectancy data" falls within "the standard of practice within the medical community." (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1191-1192.) Consequently, introducing expert testimony was required to establish that standard.

5

(*Schiff*, at p. 701.)  Mathews made no offer of proof that she had a qualified expert who could testify about the standard of care involving this disclosure.

Mathews apparently wanted to introduce this evidence about success rates to support her claim that, had her father been advised of the alternative treatment success rates, he would not have consented to the 5-FU treatment.  At the hearing on the motions in limine, the trial court asked Mathews's counsel, "[I]s there an offer of proof that consent would not have been given had that rate been disclosed."  He responded, "If we're not allowed to introduce evidence of the alternatives, then I wouldn't think so."  As already shown, the alternative treatment evidence was properly excluded.  (*Schiff v. Prados*, *supra*, 92 Cal.App.4th at p. 701.)

*Duty to Disclose the Existence of a Diagnostic Screening Test*

Mathews claimed Benjamin had a duty to disclose to her father the existence of a screening test procedure to determine "the drug's toxicity" before administering the 5-FU treatment.

The trial court granted defendants' motion in limine.  It said, "If the procedure is one that should have been proposed, then the failure to recommend it would be negligence under ordinary medical negligence principles . . . ."

Whether a doctor should advise a patient of various other procedures or diagnostic screening tests necessarily requires expert testimony on the standard of care.  "[T]he failure to recommend a procedure must be addressed under ordinary medical negligence standards."  (*Vandi v. Permanente Medical Group, Inc.* (1992) 7 Cal.App.4th 1064, 1070.)  That requires expert testimony on the standard of care which Mathews was not prepared to present.  (*Schiff v. Prados*, *supra*, 92 Cal.App.4th at p. 701; see also *Scalere v. Stenson* (1989) 211 Cal.App.3d 1446, 1450 ["[T]his *is* a case in which no diagnostic testing was recommended.  Therefore, *the predicate for the duty to disclose being absent*, there was *no duty* to provide 'material information'" (some italics added)].)

6

Mathews challenges the trial court's discretion to require expert testimony on the standard of care in an informed consent case. But the categories of information that need to be disclosed to patients are not always free from ambiguity. "[S]ituations will sometimes arise in which the trier of fact is unable to decide the ultimate issue of the adequacy of a particular disclosure without an understanding of the standard of practice within the relevant medical community." (*Arato v. Avedon*, *supra*, 5 Cal.4th at p. 1191.) In those cases, "the testimony of medical experts qualified to offer an opinion regarding what, if any, disclosures--in addition to those relating to *the risk of death or serious injury and significant potential complications posed by consenting to or declining a proposed treatment*--would be made to the patient by a skilled practitioner in the relevant community under the circumstances, is relevant and admissible." (*Ibid.*) Mathews has not shown the trial court abused its discretion by requiring such evidence.

Moreover, on summary judgment, the trial court ruled Benjamin did not breach the standard of care by not performing the screening test "before beginning the treatment." With respect to the medical treatment provided, the court said that "defendants adequately established that they did not breach the standard of care." These unchallenged findings on appeal undermine Mathews's claims of reversible error.

*Exclusion of Deposition Testimony About a Study on 5-FU Toxicity*

Mathews contends the trial court erred by "exclud[ing] the videotaped testimony of Dr. Gwen McMillin that the conclusion of a study determining 5-FU is toxic to 16% of the general population was an authoritative figure."

Defendants respond that the trial court properly granted their motion in limine to exclude this videotaped deposition evidence. They claim that allowing McMillin to testify about the contents of this "ARUP" study would introduce inadmissible hearsay into Mathews's case in chief. We agree.

7

In *Whitfield v. Roth* (1974) 10 Cal.3d 874, our Supreme Court disapproved the practice of allowing experts to testify in a plaintiff's case to quote the hearsay reports of others who were not witnesses before the court. The court said, "It is clear that doctors can testify as to the basis of their opinion [citation], but this is not intended to be a channel by which testifying doctors can place the opinion of innumerable out-of-court doctors before the jury." (*Id.* at p. 895.) "[T]he opinions of the out-of-court doctors in this case were not used by either testifying doctor in the course of treatment or diagnosis of plaintiff. They were consulted as experts and then called as witnesses to offer expert opinion evidence." (*Ibid.*) "[I]t is eminently clear that the testimony concerning the out-of-court doctors' opinion on the crucial issue in the case was offered solely for the improper hearsay purpose, namely as 'independent proof of the facts.'" (*Ibid.*)

"An expert witness may not, on direct examination, reveal the content of reports prepared or opinions expressed by nontestifying experts." (*People v. Campos* (1995) 32 Cal.App.4th 304, 308.) Permitting the introduction of such reports would be improper because it would deny the adversary the right to cross-examine those who prepared them. (*Ibid.*)

Defendants note that in her deposition McMillin said the "source" of the 16 percent toxicity level in the ARUP Laboratories report originated from an "article" in a medical journal. McMillin's deposition testimony showed that she was not qualified to testify in an informed consent case about what oncologists must generally inform their patients or what Benjamin should have specifically advised Orville Mathews. McMillin was not a medical doctor specializing in oncology. She had a Ph.D. in "pharmacology and toxicology." The trial court could reasonably find McMillin's deposition testimony about the ARUP report could not be used as a substitute for qualified expert testimony on the standard of care for disclosing information to patients. McMillin said, "The information in the interpretative portion of this [ARUP] report is *not intended for the specific patient* because *we don't know*

8

*anything about that specific patient.*"  (Italics added.)  In discussing the ARUP report, she said, "[T]here are a number of nongenetic and genetic variables . . . , so it is not definitive.  This is not an estimate for this patient.  This is *background information*."  (Italics added.)

McMillin's deposition contains discussions about several exhibits which are attached to her deposition.  They include an ARUP report and other medical articles.  Admitting such testimony in Mathews's case in chief would introduce inadmissible hearsay.  (*Whitfield v. Roth*, *supra*, 10 Cal.3d at p. 895; *People v. Campos*, *supra*, 32 Cal.App.4th at p. 308.)  In their motion in limine, defendants claimed Mathews made no showing to demonstrate "what the individual studies discussed in the literature mean in regard to treating patients."  The trial court could reasonably find that was a significant omission.

Defendants raised additional objections to the deposition.  They claimed Mathews did not lay an adequate foundation to show that:  1) 5-FU would be toxic to "16% of patients such as *Orville Mathews*," 2) the report McMillian discussed would be "applicable" to him or relevant, and 3) admitting the 16 percent figure without additional foundational proof would be confusing to jurors.  (Evid. Code, § 352.)  Mathews has not shown why these objections lacked merit.  She has not shown an abuse of discretion.

But even had the trial court erred in ruling on the motions in limine, Mathews has not shown a reasonable probability of a different result.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  Mathews requested a judgment in favor of defendants at the beginning of trial.  The rulings on the motions in limine did not prevent her from presenting evidence or making offers of proof.  At trial, the court told Mathews the judgment would be "without prejudice as to the right to appeal" the in limine rulings, but it would be "*with prejudice* in all other respects."  (Italics added.)  But Mathews did not present evidence or make an offer of proof at trial on the elements of her cause of action or on the issue of how the doctor's "failure to inform"

9

caused "injury to the plaintiff." (*Cobbs v. Grant*, *supra*, 8 Cal.3d at p. 245.) A party who claims reversible error on appeal must make adequate offers of proof. (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 344.) Evidence on causation was an element of Mathews's cause of action. "[A] physician is liable only where the failure to disclose *causes* the injury." (*Spann v. Irwin Memorial Blood Centers* (1995) 34 Cal.App.4th 644, 657.) Moreover, as already mentioned, during the in limine hearings, the court requested a specific offer of proof which Mathews was unable to present. Mathews has not shown reversible error. (*Cobbs*, at p. 245; *Watson*, at p. 836.)

We have reviewed Mathews's remaining contentions and conclude she has not shown error.

The judgment is affirmed. Costs on appeal are awarded to respondents.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

10

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____


Law Offices of Malcolm R. Tator, Malcolm Tator for Plaintiff and Appellant.

Cole Pedroza LLP, Kenneth R. Pedroza, Maureen M. Home; Clinkenbeard, Ramsey, Spackman & Clark LLP, Hugh S. Spackman, Barbara A. Carroll for Defendants and Respondents.