[L. A. No. 21356. In Bank. May 2, 1950.]

JOSEPHINE VALDEZ, Respondent, v. JAMES F. PERCY et al., Defendants; FRANKLIN D. HANKINS, Defendant and Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

David C. Marcus for Respondent.

SHENK, J.—The defendant has appealed from a judgment for the plaintiff in an action for damages for alleged malpractice in amputating the plaintiff's right breast.

The action was commenced in December, 1934, against the county of Los Angeles, James F. Percy, Chief Surgeon of the County Hospital, Franklin D. Hankins, one of the resident physicians of the hospital, and various employees of the hospital. The complaint was drawn to tender issues on the theory of assault and battery, that is, that the amputation was without the plaintiff's consent, and on the theory of negligence. The plaintiff dismissed the action as against some of the defendants. A former trial resulted in the granting of motions for nonsuit and directed verdicts, which were sustained on appeal as to all defendants except Doctors Percy and Hankins. (*Valdez* v. *Percy,* 35 Cal.App.2d 485 [96 P.2d 142].) As to them the judgment was reversed. Doctor Percy died before the second trial which took place about 15 years after the alleged malpractice, with Doctor Hankins as the sole defendant. This trial was before the court without a jury.

The defendant contends that the evidence is insufficient to support the findings and judgment. The record discloses the following:

Doctor Percy was a specialist in cancer surgery and treatment. The defendant Hankins had received his license to practice surgery and medicine in 1932, and as a resident physician of the hospital was assigned to assist Doctor Percy.

On January 30, 1934, the plaintiff with her husband, Dr. Valdez, consulted Dr. Percy for an examination of an enlarged lymph gland in the right axilla (armpit). She was about 38 years of age, 5 feet 5 inches in height, weighed 170 pounds, and was in good health. She was examined in the clinic by Doctors Percy and Hankins. The clinical examination revealed the enlarged lymph gland about the size of a large olive and several smaller lymph nodes in the axilla, but did not reveal any lumps or lymph nodes in the breasts which were large and pendulous. A report of the clinical examina-

tion was sent to the Malignancy Board of the hospital for recommendation. On suspicion of carcinoma (cancer) of the breast the board suggested a biopsy (surgical removal and microscopical examination of a rapid frozen section of the enlarged lymph node in the axilla), on the theory that the gland might be aberrant (wandering) breast tissue and for removal of the breast if necessary.

Pursuant to the board's recommendation the plaintiff reported to the hospital for surgery on March 1, 1934. She and her husband signed a consent to the contemplated biopsy and other surgery deemed advisable or necessary. At 8:30 of that morning the plaintiff was under anesthesia in surgery on the 10th floor of the hospital. Dr. Percy opened the skin under the right axilla and removed the growth. That operation consumed about 20 minutes. The removed tissue was immediately sent to the surgical laboratory on the 15th floor. After rapid freezing, a frozen section on a slide was sent by dumb waiter to the main laboratory on the second floor where it was subjected to microscopical examination. The hospital records do not clearly show that the report which accompanied the gross specimen indicated the source of the tissue. The technician in the surgical laboratory testified that it said "breast tissue" and that she so reported to the main laboratory. In 10 or 15 minutes an oral report was received in surgery, stating "carcinoma" or "carcinoma of the breast." After consultation with Dr. Valdez who was sitting in the gallery or amphitheatre, Doctors Percy and Hankins proceeded to remove the breast. Doctor Hankins performed the operation, Dr. Percy assisting and addressing the audience of students. Following the carcinoma report the field of operation was outlined by incising the skin around the breast and other portions to be removed. Throughout the operation, including the preliminary incising, the so-called Percy cautery was employed which involved the use of a thermal instrument or knife attached to an electrical heating element and heated to approximately 1500 degrees Fahrenheit. The theory of the cautery method was that cancerous and other cells coming in contact with the instrument were destroyed by the heat, whereas under the cold knife method the destruction did not take place. The preliminary incising of the skin occupied between 10 and 20 minutes.

Immediately after the oral report of "carcinoma" had been sent to surgery by the main laboratory technician, he telephoned the operator in the surgical laboratory, questioned the

nature of the frozen section as breast tissue, and requested that the gross specimen be sent to him. In about 20 minutes after the incising was started a corrected written report was received in surgery stating, "Lymphoma, possibly Hodgkin's Disease." Lymphoma is an enlargement of a lymph gland. Hodgkin's Disease is malignant lymphoma for which there is no known cure. The record clearly indicates that the corrected report cancelled the implications of carcinoma of the breast contained in the first report and neither required nor justified the removal of the breast and other tissues.

The plaintiff's witnesses testified that when the corrected report was received surgery had progressed to the completion of the outline of the field of operation, and that incising to separate the skin from the breast tissue had only begun. It was unquestioned that at that point it was possible and feasible to stop the operation and close and suture the skin. Dr. Hankins testified that when the corrected report was received the skin had been incised and separated over the entire area of operation; that the right breast tissue, pectoral muscles, most of the intercostal muscles, and the lymph glands had been removed, and that the operation was complete except for placing a few more stitches in the skin. Dr. Percy's testimony on the first trial, which was read into the record, was to the same effect. The hospital records show that the operation closed at 10:56 a. m.

The plaintiff remained in the hospital for more than two months. After her removal to her home she was in bed for four additional months. The area healed slowly, there was profuse drainage, and the sloughing of the skin over the operative field. Treatment continued for one and one-half years after the operation. Scar tissue formed over the breast and the under-arm area which contracted and caused swelling and pain and partial limitation of movement of the right arm.

The·court found against the plaintiff on the alleged cause of action based on assault and battery; but found that the defendant was negligent in the diagnosis of the plaintiff's condition as carcinoma; that in fact the plaintiff was not and the exercise of ordinary care would have disclosed that she was not afflicted with any disease at all; that the defendant negligently and without right personally removed the plaintiff's right breast, muscles and glands, greatly mutilating and disfiguring her and causing her great mental and physical anguish, pain, loss of movement of the right arm, permanent

scars, disfigurement, and severe shock to the nervous system, to the plaintiff's damage in the sum of $7,500.

The defendant contends that if there was negligence it was not attributable to him, since the evidence shows that he was assigned by the hospital authorities to assist during the operation under the direction and control of Dr. Percy, and that it was his duty to follow the directions given to him by Dr. Percy during the course of the operation. The defendant testified that he operated under the direction and with the assistance of Dr. Percy who did some of the more difficult sections. ▇ But the fact that the defendant performed the operation, with or without assistance or direction, stands uncontradicted. Since he was a co-actor he was a joint tortfeasor and liable to the plaintiff for the entire damage ensuing from the negligent act. (*Summers* v. *Tice,* 33 Cal.2d 80, 85 [199 P.2d 1, 5 A.L.R.2d 91], quoting from Restatement Torts, § 876(b) (c), and Wigmore Select Cases on the Law of Torts, § 153; *Lawless* v. *Calaway,* 24 Cal.2d 81 [147 P.2d 604], reversing judgment of nonsuit as to defendant assistant in a surgery malpractice case.) The evidence is sufficient to support the findings of negligence.

▇ The defendant contends that the plaintiff's witness Dr. Webb was not qualified as an expert because he was shown to have practiced only to a limited extent in recent years and that such practice did not include tumor surgery. The court permitted full exploration of the witness's experience and practice in tumor surgery and treatment, both as to extent and point of time. The court had a reasonable discretion in determining the witness's qualifications, and the disclosures of limitations went to weight rather than competency. (*Moore* v. *Belt,* 34 Cal.2d 525, 531 [212 P.2d 509] ; *Sinz* v. *Owens,* 33 Cal.2d 749, 753 [205 P.2d 3, 8 A.L.R.2d 757].) The fact that Dr. Webb had not himself used the Percy cautery did not disqualify him. His testimony was relevant on the question of the exercise of care in the diagnostic field and in the matter of the necessity for or desirability of the main operation. No abuse of discretion in the court's ruling is indicated.

▇ The court found against the plaintiff on the issue of assault and battery because she consented to the operation. It also found that the removal of the plaintiff's breast was "without right." The defendant therefore argues that the findings are incurably conflicting. The fact that there was a prior consent did not relieve the defendant from liability. (*Valdez* v. *Percy, supra,* 35 Cal.App.2d at p. 491.) The con-

sent did not foreclose inquiry into negligent conduct in determining the advisability or necessity for the operation. The defendant also argues that a finding that the main operation was completed before the second report was received is inconsistent with the findings of negligence. As indicated, the evidence on the time element was conflicting. But the exact time of the completion of the main operation was immaterial in view of the supported findings of negligence in the diagnosis and removal of the plaintiff's breast.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied June 1, 1950.